UNITED STATES DISTRICT COURT    FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

JESSE WORLUMARTI,

                        Petitioner,

        - versus -

UNITED STATES OF AMERICA,

                        Respondent.

MEMORANDUM AND ORDER

13-CV-6202 (JG)

A P P E A R A N C E S:

    JESSE PAUL LEVINE
        Ehrinpreis & Levine PLLC
        36 E Broadway, Ste 2C
        New York, NY 10002
    By:   *Attorney for Petitioner*

    LORETTA E. LYNCH
        United States Attorney
        Eastern District Of New York
        271 Cadman Plaza East
        Brooklyn, NY 11201
    By:   Michael Warren
        *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

        Jesse Worlumarti brings this petition for a writ of error coram nobis attacking his 1997 conviction and one-year prison sentence (long since served) for using a false passport in violation of 18 U.S.C. § 1543. Although an immigration judge found that Worlumarti would likely be tortured if he returned to Nigeria, his country of citizenship, Worlumarti's conviction and sentence have rendered him ineligible for asylum in the United States. He is currently permitted to remain in this country only under an order withholding his removal to prevent torture. Worlumarti argues that his conviction should be vacated, or his sentence reduced,

because his counsel was ineffective.  For the reasons given below, Worlumarti's petition is denied.

BACKGROUND

Some background of this case is also laid out in Worlumarti's direct appeal, *United States v. Celenk*, 159 F.3d 1348, 1998 WL 480756 (2d Cir. 1998) (unpublished table decision) ("*Worlumarti I*"), and my previous opinion denying his first coram nobis petition, *Worlumarti v. United States*, 00 CV 3538 (JG), 2002 WL 257817 (E.D.N.Y. Feb. 8, 2002) ("*Worlumarti II*").

According to an affidavit he has filed, Worlumarti is a Nigerian citizen and a member of the Ogoni ethnic group; he participated in various political causes in Nigeria prior to 1997.  See Affidavit of Jesse Worlumarti in Support of Writ of Error Coram Nobis ("Worlumarti Aff.") ¶¶ 2-7, ECF No. 1-2.  Worlumarti claims that he twice fled from Nigeria to Germany (in 1992, and again in 1996) to avoid being placed on a government watch list, but returned to Nigeria both times.  *Id*. ¶ 5.  Worlumarti claims that in 1997, he fled to Germany after being tortured by men he believed to be government agents.  *Id*. ¶¶ 6-7.  From there he flew to the United States using a false Dutch passport bearing the name Nuri Celenk.  *See Worlumarti II*, 2002 WL 257817, at *1.

Although the matter is disputed, Worlumarti contends that, after he exited the plane in New York, he did not actually attempt to deceive officials at the United States border about his identity or the veracity of his passport.  Rather, he claims that he immediately told the border control agent that he was a Nigerian citizen seeking asylum in the United States.  *See* Worlumarti Aff. ¶ 12 ("Upon my arrival at [JFK] airport, I informed the Immigration Officers that the Dutch passport which I was carrying was false and that I was escaping Nigeria.  I requested an attorney and asked to see a judge.").  By contrast, according to the factual account

in Worlumarti's presentence report (which he had a chance to contest at the time of his original guilty plea and sentence), Worlumarti did not reveal that the passport was fake, and instead attempted to enter the United States under the name Celenk Nuri.[1]  *See* PSR ¶ 2, ECF No. 1-4 (Ex. 6).  It is undisputed that he was detained, and that border officials attempted to place him on several planes bound for Germany over the next few days, but Worlumarti resisted, and officials were unsuccessful in deporting him.  *Id*. ¶¶ 3-5.  On April 2, 1997, Worlumarti resisted being placed on a plane by charging at passengers while screaming, "I will blow this plane."  *Id*. ¶ 5.  At that point he was detained and charged with attempting to use a false passport in violation of 18 U.S.C. § 1543.

In the summer of 1997, before Worlumarti had decided whether to plead guilty or proceed to trial, Interpol provided additional information about Worlumarti's arrest history in Germany.  *See* PSR ¶ 18.  Worlumarti had been arrested in Germany six times using six different names.  *Id*.  Furthermore, German authorities had issued an order of expulsion against him.  *Id*.

In a supplemental affidavit in this proceeding, Worlumarti now contends that his German criminal history arose out of his attempts to avoid persecution in Nigeria:  he claims that he spent two separate periods in Germany (in 1992 and in 1996), and that although he entered that country legally each time on a tourist visa, he used illegal documents to work.  *See* Supplemental Affidavit of Jesse Worlumarti ¶¶ 2-5, ECF No. 8-1.  Nonetheless, when Worlumarti's German arrest history was revealed in 1997, Worlumarti's lawyer, Abraham Clott, became concerned that Worlumarti's claims of torture in Nigeria would not be credible and that the trial judge would be unsympathetic.  As a result, Clott advised Worlumarti to plead guilty, and he did.  *Id*. ¶¶ 7-10.

---

[1] The documents in the record are inconsistent as to whether the false name was "Nuri Celenk" or "Celenk Nuri."

Worlumarti's total offense level was computed as 4, with a criminal history category of I, corresponding to a Guidelines range of zero to six months. *See* PSR ¶¶ 8-17; U.S. Sentencing Guidelines Manual (1995). However, at a sentencing hearing on September 19, 1997, Judge Nickerson indicated that he was inclined to consider Worlumarti's threat to blow up the plane, as well as his prior repeated refusals to leave the country, as bases for an upward departure; he therefore gave both sides additional time to brief the question. *See* September 19, 1997 Sentencing Hearing Transcript 3-4, 10, ECF No. 1-4. After reviewing video of Worlumarti's airport outburst, Judge Nickerson imposed a one-year sentence. *See* September 26, 1997 Sentencing Hearing Transcript 3-4, ECF No. 1-4. The court relied on the general departure provision of the (then-mandatory) Guidelines, U.S.S.G. § 5K2.0 (1995), which granted authority to depart from the Guidelines range if the court found "'an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that prescribed.'" (quoting 18 U.S.C. § 3553(b) (1996)).

Worlumarti's sentence was affirmed on appeal. *See Worlumarti I*, 1998 WL 480756. The Court of Appeals rejected the argument that Judge Nickerson had failed to sufficiently explain the reasons for his departure. *Id*. at *2-3.

In May of 2000, Worlumarti – who had by then completed his prison term – filed a petition for a writ of error coram nobis. The case was eventually reassigned to me after Judge Nickerson's death. With the assistance of counsel, Worlumarti argued that his criminal proceeding had lacked full context since he had been unable to explain that he used a false passport to escape persecution in Nigeria. *See* Memorandum of Law in Support of Petition for Writ of Error Coram Nobis, ECF No. 1-5 (Ex. 10). He also claimed that Judge Nickerson may not have understood the full consequences of the Illegal Immigration Reform and Immigration

4

Responsibility of 1996 ("IIRIRA"), codified in sections of 8 U.S.C. ch. 12, which had been recently enacted at the time of sentencing, and which creates a per se bar on asylum claims for anyone sentenced to a term of at least twelve months for immigration document fraud, *see* 8 U.S.C. § 1101(43)(P) & § 1158(b). I denied the petition. *See Worlumarti II*, 2002 WL 257817.

Worlumarti filed the instant petition on November 1, 2013, in his criminal case, No. 97-cr-485, but the motion was docketed in this new case, No. 13-cv-6202, on November 8, 2013. I heard argument on May 2, 2014.

## DISCUSSION

A. *Standard of Review*

"A writ of error coram nobis is 'essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction'" but who continue to suffer the conviction's consequences. *United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000) (quoting *Fleming v. United States*, 146 F.3d 88, 89-90 (2d Cir. 1998) (per curiam)); *see also Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014) (coram nobis is "typically available only when habeas relief is unwarranted because the petitioner is no longer in custody"). "[R]elief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *Foont v. United States*, 93 F.3d 76, 78-79 (2d Cir. 1996) (internal quotation marks, citations, and alterations omitted).

"To obtain coram nobis relief, a petitioner 'must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.'" *Mandanici*, 205 F.3d at 524 (quoting *Fleming,* 146 F.3d at 90). During the coram nobis proceeding, the prior proceedings that led to the petitioner's conviction "are presumed to be correct, and 'the burden rests on the

5

accused to show otherwise.'" *Foont*, 93 F.3d at 78-79 (quoting *United States v. Morgan,* 346 U.S. 502, 512 (1954)).

B.  *Standard for Showing Ineffective Assistance of Counsel*

Worlumarti claims that his trial counsel was ineffective. A violation of the constitutional right to effective assistance of counsel may be grounds for granting the writ of coram nobis, *see Kovacs*, 744 F.3d at 49, and the claim is reviewed under the familiar standard of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), *see Kovacs*, 744 F.3d at 50.

To establish a claim of ineffective assistance of counsel, the petitioner must show (1) that his counsel supplied deficient representation, and (2) that the petitioner suffered prejudice as a result of that deficient performance. *Strickland*, 466 U.S. at 687-88. To establish deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687). To establish prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

C.  *Timeliness*

The government argues that Worlumarti's petition should be denied as untimely. The standard for relief under the writ incorporates something like a timeliness requirement: the petitioner must show that "sound reasons exist for failure to seek appropriate earlier relief." *Mandanici*, 205 F.3d at 524 (quoting *Fleming,* 146 F.3d at 90). Worlumarti faces a difficult burden, since this petition comes more than sixteen years after his guilty plea, and more than twelve years after his previous coram nobis application. Nonetheless, because I conclude that

6

the application fails on the merits, I need not consider whether the petition would also be untimely.

D.      *Worlumarti's Claims for Relief*

Worlumarti claims ineffective assistance of his original counsel both in plea negotiations and at sentencing.

1.      *Ineffective Assistance During Plea Negotiations*

Worlumarti argues first that his counsel failed to perceive and investigate flaws in the government's case, which prevented his counsel from negotiating a favorable plea deal.

This argument is essentially about the facts of the case. Worlumarti claims that the government's account of the facts is not, and was never, plausible: because Worlumarti came to this country to seek asylum, he had no motive to attempt to pass unnoticed on his false passport. Instead, he claims, he told border officials that he was seeking asylum and had used the false passport to escape to Germany, and then to the United States. Moreover, he argues, he had specifically sought out the United States because, under American law, a person bearing false papers may still seek asylum without being removed. *See* Worlumarti Supplemental Aff. ¶ 3, ECF No. 1-5, Ex. 12. (That is a true statement of the law both now and in 1997. *See* 8 C.F.R. § 217.4.) Rather than pursue this line of investigation, however – which, he argues, might have undermined the government's entire case for criminality – Worlumarti's counsel encouraged him to plead guilty.

Even if I assume the truth of Worlumarti's account,[2] that does not render his counsel's assistance constitutionally ineffective. A reasonable lawyer might have judged that,

---

[2]    I note that Worlumarti bears a difficult burden in contesting facts at this late date, since the prior proceedings that led to the petitioner's conviction "are presumed to be correct, and 'the burden rests on the accused to show otherwise.'" *Foont*, 93 F.3d at 78-79. Furthermore, Worlumarti's factual account assumes, but does not prove, that he came here intending to seek asylum rather than to attempt illegal entry. His subsequent immigration proceedings undermine, but by no means eliminate, that possibility, especially given his record in Germany.

whatever the truth of Worlumarti's claims, a jury would be unlikely to believe his protestations of innocence, given his record of providing false documents in Germany. A reasonable lawyer might also have concluded that the German expulsion order would have called into question Worlumarti's claims that he came to the United States openly seeking asylum. The decision to recommend a plea of guilty was therefore a permissible strategic decision and not the basis for a claim of ineffective assistance. *See Strickland*, 466 U.S. at 689-90.

2. *Ineffective Assistance During Sentencing*

Worlumarti also argues that his counsel was ineffective at sentencing both by failing to challenge Judge Nickerson's basis for departing upward at sentencing, and by failing to request a one-day difference in his one-year sentence, which would have meant that Worlumarti's conviction was not for an aggravated felony.

a. *Failure to Challenge Upward Departure*

Worlumarti argues that his counsel should have done more to challenge Judge Nickerson's decision to depart upward based on Worlumarti's threat to "blow the plane." His argument is essentially about the facts – that Worlumarti's threat was motivated by a fear of returning to Nigeria, and that Worlumarti had a legitimate right to request asylum as soon as he arrived.

Once again, I do not find that Worlumarti's counsel was constitutionally inadequate for failing to raise these arguments. Two key facts tended to make Worlumarti's factual position unpersuasive: first, according to the PSR, Worlumarti had attempted to enter the United States as a tourist, *see* PSR ¶ 2; and second, Worlumarti's record in Germany, discussed above, undermined his claim that he came to the United States to seek asylum. Worlumarti's lawyer may have judged that raising a contrary account of the facts was not likely to persuade the sentencing judge and might even hurt Worlumarti by demonstrating that he did not accept

8

responsibility for his conduct.  It is true that an immigration judge later found credible Worlumarti's claims of political oppression and fear of torture.  But that does not conclusively establish the truth of Worlumarit's claims, let alone show that Worlumarti's counsel was deficient for believing that Worlumarti's factual argument would not be helpful at sentencing.

b. *Failure to Request a Sentence of Under One Year*

Worlumarti also argues that his counsel was ineffective because he failed to request a sentence of less than one year.  Had Worlumarti received a sentence under one year – or, in other words, a sentence at least one day less than the sentence he received – his conviction would not have constituted an aggravated felony for immigration law purposes, and thus would not have rendered him per se ineligible for asylum.  *See* 8 U.S.C. § 1101(43)(P) (defining violations of § 1543 for which sentence is at least a year as "aggravated felony"); 8 U.S.C. §§ 1158(b)(2)(B) & (b)(2)(A) (rendering persons convicted of an aggravated felony ineligible for asylum).

Worlumarti's claim is analogous to the claim of ineffective assistance raised in *Padilla v. Kentucky*, 559 U.S. 356 (2010), in which the Supreme Court held that a criminal defense lawyer has an obligation to provide his client with accurate information about the immigration consequences of a guilty plea.  Notably, *Padilla* applies both to affirmatively incorrect advice (the rule in the Second Circuit at least since *United States v. Couto*, 311 F.3d 179, 188 (2d Cir. 2002)) as well as to counsel's omissions.

As his counsel emphasized at oral argument, Worlumarti's claim is slightly different – not that his lawyer should have advised him of the immigration consequences of his plea, but that his lawyer should have made an argument to the court for a different sentence based on its immigration consequences.  That does not distinguish *Padilla*, however.  The center of both *Padilla* and the argument in this case is the claim that the Sixth Amendment guarantees a

9

criminal defense lawyer with an understanding of the immigration consequences of criminal law. Prior to *Padilla*, counsel's failure to understand those consequences was not a basis for ineffective assistance claims.[3]

But the Supreme Court has held that the obligation of *Padilla* does not apply retroactively to cases that became final before *Padilla* was decided. *See Chaidez v. United States*, 133 S. Ct. 1103, 1105 (2013).[4] Since Worlumarti's case became final after the Second Circuit affirmed his conviction in 1998, Worlumarti cannot obtain the benefit of the *Padilla* rule (or this extended application of it) on a collateral attack.

## CONCLUSION

I understand that Worlumarti is in a difficult position, which is no doubt made even more difficult for him by the seemingly inconsistent outcomes of his criminal and immigration proceedings. Even so, I cannot now – seventeen years after the events leading to his criminal conviction – responsibly overturn the earlier adjudications in the case. Thus, for the reasons given above, Worlumarti's petition is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: May 5, 2014
      Brooklyn, New York

---

[3] I do not view *Shushansky v. United States*, 93 CV 5632, 1994 WL 716228 (E.D.N.Y. Dec. 21, 1994) or *Janvier v. United States*, 793 F.2d 449 (2d Cir. 1986) as holding to the contrary. Both of those cases dealt with a previous version of immigration law, in which the sentencing judge could, upon defendant's motion, order that a criminal conviction not be used as the basis for deportation. *See Shushansky*, 1994 WL 716228 at *2. The so-called judicial recommendation against deportation was sought and awarded within the defendant's criminal case by the sentencing judge, and thus defense counsel was properly considered responsible for it. *Padilla*, by contrast, deals with criminal defense counsel's obligations as they relate to an entirely separate proceeding (that is, an action in immigration court).

[4] In *Mandanici*, the Second Circuit held that the rule of *Teague v. Lane*, 489 U.S. 288, 301 (1989) (plurality opinion), applies to coram nobis petitions as well as to the more common custodial collateral attacks under §§ 2254 and 2255. *See* 205 F.3d at 527.